PARK PLACE AT MALTA, LLC, Appellant, v BERKSHIRE BANK et al., Respondents. [49 NYS3d 781]—

Peters, P.J. Appeal from an order of the Supreme Court (Hartman, J.), entered January 25, 2016 in Albany County, which granted defendants' motion for summary judgment dismissing the complaint.

From 2009 through 2013, plaintiff owned certain real property in the Town of Malta, Saratoga County. Such property was under development and was improved by, or was to be improved by, single-family homes and multifamily units, as well as a clubhouse. The property was encumbered by a mortgage that secured a promissory note whereby plaintiff promised to repay to defendant Berkshire Bank $3,860,000. The note required plaintiff to make an initial principal payment of $500,000 in September 2010 and then to make annual principal payments of at least $1,310,000 each September until the loan was paid off.

Plaintiff made only a partial principal payment of $280,000 in September 2010, prompting Berkshire to declare the loan in default. Plaintiff again defaulted on the loan in May 2011 by failing to keep an interest reserve account sufficiently funded. In September 2011, as a result of, among other things, these defaults, Berkshire transferred plaintiff's loan file to defendant Thomas Matejek of its commercial loan workout department. The note matured by its terms on September 7, 2012, at which time the entire principal, accrued interest and other sums owing thereunder became immediately due and payable in full. In late September 2012, plaintiff advised Matejek that it had entered into an agreement with Albany Partners III, LLC (hereinafter AP) to sell a portion of the property's multifamily lots and the clubhouse for $4,760,000, which would have satisfied plaintiff's debt obligation to Berkshire. The purchase agreement was contingent on, among other things, AP's ability to raise the necessary capital within 120 days.

In light of such purchase agreement, plaintiff requested that Berkshire forbear from exercising its rights and remedies

under the loan documents for a limited period of time to allow plaintiff to close on its transaction with AP. Berkshire agreed, but required plaintiff to enter into a forbearance agreement. This agreement, executed in December 2012, provided that the duration of the forbearance would be until the AP deal closed, February 28, 2013 or upon default, whichever occurred first. The agreement further stated that, if by February 28, 2013 the AP sale had not yet closed and no event of default occurred, Berkshire would continue to forbear during an extended forbearance period commencing on February 28, 2013 and ending immediately on the earliest of the closing of the sale, March 29, 2013 or default. The agreement specified, as relevant here, that "[a]ny termination of the AP [p]urchase [a]greement" would constitute a default. It also reserved Berkshire's rights under the loan documents and indicated that any waiver of its rights must be in writing and that no omission, delay or partial exercise of a right or remedy could be construed as a waiver of such rights.

On February 22, 2013, AP canceled the purchase agreement. Plaintiff's principal, Frank Tate, notified Matejek of the cancellation and informed Matejek that, due to a change in local law, more units could be built on the property, making it more valuable. Thereafter, plaintiff tendered to Berkshire a partial payment of approximately $10,000, which Berkshire deposited on March 1, 2013. Five days later, Berkshire sent plaintiff a forbearance expiration notice, which indicated that the termination of the purchase agreement with AP constituted an event of default, that the initial forbearance period had expired by its terms on February 28, 2013 and that, accordingly, no extended forbearance period was in force or effect. On March 7, 2013, Tate sent Matejek a letter stating that he had discussed with "Leccese [sic] Group" a deal to sell a portion of the property for $7.5 million and that other parties were also "very interested" in purchasing the property. On March 12, 2013, LeCesse Development Corporation issued to plaintiff a letter of interest (hereinafter LOI) to purchase a portion of the property for $7.5 million.

Shortly thereafter, Tate contacted Matejek to schedule a meeting between Berkshire and LeCesse regarding the potential transaction between plaintiff and LeCesse. Tate wanted to meet in March, but Matejek stated that he was not available and the meeting was allegedly scheduled for April 4, 2013. On March 29, 2013, Berkshire sold plaintiff's loan to Juno Malta LLC. Berkshire informed plaintiff of the loan sale by letter dated April 2, 2013. Plaintiff subsequently sold a

larger portion of the property than it had been contemplating to LeCesse for $6.5 million.

In April 2015, plaintiff commenced this action seeking $2.5 million that it claimed to have lost as a result of defendants' alleged misconduct. The complaint asserted causes of action for breach of fiduciary duty, aiding and abetting such breach, fraud and misrepresentation, negligence, breach of the implied covenant of good faith and fair dealing, tortious interference with a business relationship and promissory estoppel. Defendants answered and moved for summary judgment dismissing the complaint. Supreme Court granted the motion, and plaintiff appeals.

Defendants met their initial burden on the motion by tendering proof showing that plaintiff defaulted on the loan, that the forbearance period terminated when AP canceled its conditional agreement to purchase the property and that plaintiff did not suffer any cognizable injury that was proximately caused by defendants when plaintiff decided to sell a larger portion of the property to LeCesse at a reduced price (*cf. Hotel 71 Mezz Lender LLC v Mitchell*, 63 AD3d 447, 448 [2009]; *Trustco Bank N.Y. v Drake*, 195 AD2d 665, 667 [1993]). The burden, therefore, shifted to plaintiff to demonstrate the existence of a triable issue of fact (*see generally Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). This plaintiff failed to do.

To prevail on its causes of action, plaintiff was required to establish that it suffered an actual, nonspeculative injury that would not have occurred but for defendants' conduct and that defendants proximately caused such injury (*see Route 217, LLC v Greer*, 119 AD3d 1018, 1020 [2014]; *Marchell v Littman*, 107 AD3d 1082, 1083 [2013], *lv denied* 22 NY3d 856 [2013]; *Country Club Partners, LLC v Goldman*, 79 AD3d 1389, 1391 [2010]; *OSJ, Inc. v Work*, 273 AD2d 721, 723 [2000]). Plaintiff's complaint alleged that defendants improperly shared confidential information with Mark Rosen, the manager of Juno Malta, regarding the LeCesse deal prior to Berkshire's sale of the loan to Juno Malta and intentionally delayed meeting with LeCesse and plaintiff in order to complete the sale of the loan before plaintiff's deal with LeCesse could close. Yet, plaintiff's proffers failed to rebut Matejek's and Rosen's affidavits attesting that neither Matejek nor anyone else from Berkshire ever disclosed such information to Rosen. Plaintiff's mere speculation that Matejek "must have" told Rosen about LeCesse's purported $7.5 million "offer" was patently insufficient to defeat the summary judgment motion (*see Lichtman v Mount Judah*

*Cemetery,* 269 AD2d 319, 321 [2000], *lv dismissed and denied* 95 NY2d 860 [2000]; *Parisi v Leppard,* 237 AD2d 419, 420 [1997]).

Even assuming, arguendo, that defendants delayed the meeting with plaintiff and LeCesse and disclosed LeCesse's "offer" to Rosen to encourage Juno Malta to purchase the loan, plaintiff failed to show how such disclosure and sale injured it or what its injuries were. Although plaintiff claimed that defendants' alleged wrongdoing prevented the closing of the contemplated $7.5 million deal with LeCesse, the unsigned LOI from LeCesse expressly stated that the proposed transaction was contingent on Berkshire and another lender accepting LeCesse as a borrower in their sole discretion. Moreover, even if the LOI had been executed, it indicated that it was "an expression of interest only, and none of the provisions hereof shall be binding on either party unless and until" set forth in a fully-executed agreement. As aptly observed by Supreme Court, plaintiff, who only had "a provisional agreement containing major unmet contingencies," is "attempting to reap the fruits of a contract that never existed."

Plaintiff likewise failed to raise an issue of fact as to how Berkshire's sale of the loan to Juno Malta compelled plaintiff to sell its property at a loss. As plaintiff did not dispute Berkshire's right to sell the loan, even viewing the evidence in the light most favorable to plaintiff, we agree with Supreme Court that plaintiff failed to raise a triable issue of fact as to whether it suffered an ascertainable injury that was proximately caused by defendants (*see Route 217, LLC v Greer,* 119 AD3d at 1020; *Country Club Partners, LLC v Goldman,* 79 AD3d at 1391-1392).

Finally, Supreme Court properly refused to deny defendants' motion as premature (*see* CPLR 3212 [f]). The documentary proof submitted on the motion conclusively established that each of plaintiff's seven causes of action failed as a matter of law and that the discovery sought by plaintiff would not result in a triable issue of fact (*see Route 217, LLC v Greer,* 119 AD3d at 1021; *Weintraub v Levine,* 22 AD3d 664, 664 [2005]). Furthermore, as any alleged misrepresentations by defendants would have been made to Tate, defendants could not be viewed as being in exclusive possession of such information (*see Ingalsbe v Chicago Ins. Co.,* 287 AD2d 939, 940 [2001]; *compare Gates v Easy Living Homes, Inc.,* 29 AD3d 733, 734 [2006]). Accordingly, the complaint was properly dismissed.

McCarthy, Egan Jr., Rose and Mulvey, JJ., concur. Ordered that the order is affirmed, with costs.