WORKBENCH, INC., Appellant, v SYBLIN REALTY CORP. et al., Respondents, et al., Defendants.

It is well established that in order to be entitled to a preliminary injunction, the moving party must demonstrate a likelihood of success on the merits, irreparable injury absent a granting of injunctive relief, and a balancing of the equities in its favor *(see, Kurzban & Son v Board of Educ.,* 129 AD2d 756). Based upon a review of the record, we find that the plaintiff has satisfied this burden and, accordingly, its motion for a preliminary injunction should have been granted to the extent indicated herein.

The instant appeal involves the commercial rental space located at 128 Montague Street in Brooklyn which is owned

by the defendant Syblin Realty Corp. (hereinafter Syblin). The defendant Sylvia Blinchik is the president of Syblin. In early April 1986 Syblin's attorney drafted a lease which provided that the plaintiff, a furniture retailer, would rent the demised premises for a period of 10 years. The rent for the first five years of the term would be $90,000 a year, and for the second five-year period the rent would be $100,000 per year. This lease was negotiated on behalf of Syblin by Sylvia Blinchik's daughter, Ann Blinchik, who had apparently been given full authority by her mother to negotiate the lease. In fact, when the plaintiff initially approached Sylvia Blinchik about renting the subject premises, the plaintiff was instructed to deal exclusively with Ann Blinchik on all matters regarding the lease. The original lease and rider which were forwarded to the plaintiff were signed "Sylvia Blinchik".

On April 23, 1986, the lease and rider were returned to Ann Blinchik by the plaintiff with certain changes initialled by the plaintiff's chairman. The following day, apparently at the request of Ann Blinchik, the plaintiff delivered a check for the first month's rent to Syblin. The check was ultimately deposited into one of Syblin's accounts bearing Sylvia Blinchik's endorsement. On May 8, 1986, Ann Blinchik delivered the revised lease and rider to the plaintiff with the changes initialled "SB". The lease also bore a second signature of "Sylvia Blinchik".

On May 13, 1986, Sylvia Blinchik sent the plaintiff a letter stating that she had not authorized the signing of the subject lease and that she, in fact, told her daughter that she did not agree with the terms thereof. She stated further that the plaintiff's rental check would be returned and that the plaintiff was not to enter the premises.

On June 12, 1986, Syblin and Sylvia Blinchik entered into a contract to sell 128 Montague Street and two adjoining properties to a third party for a purchase price of $3,500,000. The contract stated that the commercial space at 128 Montague Street was vacant. The parties also signed a supplemental lease permitting the prospective buyers to occupy this commercial space as well as an area in a neighboring building for $11,100 a month until the date of closing. On that same day, Syblin sent the plaintiff a check reimbursing it for its first month's rent together with a note from Syblin's attorney declaring that Ann Blinchik was without authority to deposit the plaintiff's check in Syblin's account.

Upon learning of Syblin's contract of sale and lease of the subject premises, the plaintiff commenced the instant action,

*inter alia,* for specific performance of its lease. The plaintiff also moved for a preliminary injunction to enjoin the defendants from interfering with its right to occupy the subject premises. The hearing on the plaintiff's motion took approximately seven months to complete, primarily due to the difficulty in having Ann and Sylvia Blinchik appear at the hearing.

Ann Blinchik testified that she signed the initial draft of the plaintiff's lease and rider in her mother's name while in her mother's presence and with her consent. When the lease and rider were returned by the plaintiff with certain changes, Ann Blinchik recalled that her mother wanted to have Syblin's attorney look at it. In any event, Ann, in her mother's presence, initialled the changes and again signed her mother's name to the lease. Ann stated that her mother made no effort to prevent her from initialling and signing the altered lease. Ann also indicated that when she received the plaintiff's check for the first month's rent, she endorsed it with her mother's signature and deposited it.

Sylvia Blinchik testified that her signature was placed on the initial lease and rider by Ann Blinchik with Sylvia's knowledge. When the plaintiff returned the lease with certain changes, Sylvia told her daughter that Syblin's attorney should review the changes before the revised lease was executed. At this point in her testimony, Sylvia refused to continue testifying and left the courtroom before the plaintiff's attorney was able to question her about her initials and signature which appeared on the altered lease. Despite a court directive, Sylvia refused to appear at the hearing to complete her testimony. As a result, the court ruled that in view of Sylvia's refusal to testify, she was "subject to the strongest inferences that may be drawn against her".

During the hearing, the court denied the plaintiff's request to admit into evidence the altered lease and rider between the parties. The court based its ruling on the ground that the record is barren of any evidence as to whether the signature affixed to that document was that of Sylvia Blinchik.

In the order appealed from, the plaintiff's application for a preliminary injunction was denied. The court determined that the plaintiff failed to demonstrate that Sylvia Blinchik either authorized or consented to having her daughter sign and initial the altered lease in Sylvia's name. We disagree and, accordingly, reverse.

At the outset, we note that the hearing court erred in

excluding the altered and initialled lease and rider from evidence. The agreement should have been admitted into evidence for the purpose of determining whether Sylvia Blinchik's initials and signature were placed on the document with her full knowledge and consent *(see, Scarane v Fraser Mtge. Corp.,* 279 App Div 602).

Turning to the merits of the action, we find, at the outset, that the plaintiff adduced sufficient proof to demonstrate that Ann Blinchik was cloaked with the apparent and implied authority to negotiate the lease with the plaintiff on behalf of her mother and Syblin. As previously noted, the plaintiff was informed by Sylvia that her daughter Ann would negotiate the lease on behalf of Syblin and her mother *(see,* 2 NY Jur 2d, Agency, § 90, at 537-538). Moreover, both Ann and Sylvia testified that Ann was authorized to place her mother's signature on the original lease agreement and rider. According to Ann, she also placed her mother's initials and signature on the altered lease in her mother's presence and with her knowledge even though Sylvia indicated that she wanted to have Syblin's attorney review it. Sylvia's refusal to complete her testimony in regard to whether Ann was authorized to sign and initial the altered lease in Sylvia's name, subjected her to the strongest inference against her which the evidence would permit *(see,* Fisch, New York Evidence § 1125, at 635 [2d ed]). In view thereof, it is reasonable to conclude that Sylvia consented to her initials and signature being placed on the altered lease and rider. Thus, the plaintiff has demonstrated a likelihood of success on the merits of the underlying action.

We also conclude that the plaintiff will sustain irreparable injury if a preliminary injunction does not issue. The plaintiff has adduced sufficient evidence indicating that the subject premises is uniquely suited to its needs in terms of size and location. Finally, the balance of equities in this case weighs in favor of the plaintiff who negotiated in good faith with the defendants and was reasonably led to believe that the lease was valid and binding.

In view of the foregoing, the plaintiff's motion for a preliminary injunction should have been granted to the extent indicated herein. Mollen, P. J., Mangano, Kooper and Harwood, JJ., concur.